FILED ENTERED
LODGED RECEIVED

SEP 6 2017

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                    DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KLICOS PAINTING CO., INC.          :
                                   :
v.                                 :     Civil No. JFM-15-02505
                                   :
SAFFO CONTRACTORS, INC.            :
                                   :

## MEMORANDUM

This case involves alleged breaches of oral contracts and related claims arising out of work performed on a project to repair and paint various bridges on I-95 and I-395. Defendant/Counterplaintiff Saffo Contractors, Inc. ("Saffo") has filed a motion for summary judgment and Plaintiff/Counterdefendant Klicos Painting Co., Inc. ("Klicos") has filed a partial motion for summary judgment. [ECF Nos. 76, 98]. The issues have been fully briefed, [ECF Nos. 86, 88, 95, 102, 103], and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, both motions will be granted in part and denied in part.

## BACKGROUND

On July 29, 2013, the Maryland Transportation Authority ("MDTA") awarded Saffo a contract to perform "Superstructure Repairs and Zone Painting of Various Bridges on I-95 and I-395 South of Fort McHenry Tunnel" (Contract No. FT 2575-000-006) ("the Project"). In November, 2013, Saffo's principal, Nick Saffo, met with Klicos's principal, George Klicos, and other employees of both companies for a lunch meeting at Nick's Seafood to discuss the Project. George Klicos Depo. at 156-161. At that meeting, according to George Klicos, the parties reached an agreement to work on the Project together.[1] *Id.* George Klicos characterized the

---

[1] As described below, both parties submitted witness affidavits in opposition to the summary judgment motions that are inconsistent with those witnesses' earlier deposition testimony. Where the depositions

1

lunch meeting as "general discussions" and "pretty basic, basic conversations. I mean, nothing like, okay, this bridge, we're going to do this, or this bridge we're going to do this, or this bridge we're going to do this. It was very general what we're going to do, how we're going to do it and what the plan was." George Klicos Depo. at 158-59. As for the payment, George Klicos testified that as the money came in,

> It would be divvied out as anything over and above actual costs at that time. We would split it up. We would divvy it out. There was no set amount going into it. It's as every – ultimately as every pay estimate came in, we were paid a sum. There was no formula as to why we got paid this or why we got paid that. There was never any formula going in as to how we would get paid, when I – how much I would get paid, exactly how much I would get paid.

George Klicos Depo. at 165-66. In contrast, Nick Saffo testified that at the November lunch meeting, the parties discussed a lump sum subcontract agreement and made "no commitment at that time." Nick Saffo Depo. at 45-46. Nick Saffo testified that there was no discussion at that meeting about sharing or distributing profits. *Id.* at 48.

Several months later, in March, 2014, Nick Saffo and George Klicos participated in a telephone conversation with two other Saffo employees. Ost Depo. at 110-20. During that call, according to Saffo employee Michael Ost, the parties agreed that Klicos would be a subcontractor to Saffo on the Project. *Id.* at 110-13. Ost testified that the agreement was:

> Saffo was going to control all of the accounting and cash flow on the project, and there would be periodic distributions of cash flow to keep the operating account above negative. And based on [Klicos's] completion of all cleaning and painting services on all of the structures on the project, their incentive was going to be a 50/50 split on the profit at the end of the project.

*Id.* at 113. According to Ost, "The only requirement that was set in stone was completion – through the completion of the project." *Id.* at 131. Nick Saffo testified that in that phone call, they agreed, "if [Klicos] would bring the job in through the completion, and we all watched his

and affidavits diverge, the facts contained in this background section derive from the deposition transcripts.

cost and gave him a cash flow advancement to keep him operating that we would share in the total after completion." Nick Saffo Depo. at 67. George Klicos has no recollection of that March, 2014 telephone call. George Klicos Depo. at 265-67.

On or about March 17, 2014, George Klicos signed a "Contractor's Request for Approval of Subcontractor," which Saffo submitted to MDTA for approval to use Klicos as a subcontractor on the Project. Def. Mot. Ex. 1, 2. Klicos performed work on the Project from approximately March through November of 2014. George Klicos Depo. at 147. Klicos submitted periodic invoices to Saffo, and Saffo paid Klicos upon receipt of the invoices. According to George Klicos, the amounts of the invoices he sent were based on his review of Saffo's expenses, and "[s]aid okay, this month there's – give me $300,000. That more than covers my expenses. That more than leaves you with enough money. The project is doing well. We're starting to divvy up the profit. They never objected to sending me the money." George Klicos Depo. at 289. When asked about his basis for requesting a particular amount at a particular time, George Klicos testified, "My basis is we had a deal. You guys said you're going to do this. Give me my money." Klicos Depo. II at 504. He also said, "What prompts me to ask for my profit? Well, given the fact that you've been giving it to me. That's what prompts me." Klicos Depo II at 507. Saffo's position is that it was paying ongoing cash advances to Klicos to allow Klicos to undertake project-related expenses while maintaining positive cash flow. Nick Saffo Depo. at 80-81; Ost Depo. at 113; Tia Saffo Depo. at 224.

By December, 2014, the painting work on the Project was about 50% -65% complete. Klicos Depo. II at 502-03. In December, Klicos stopped painting work on the project, citing winter weather conditions that were unfavorable for painting. George Klicos Depo. at 99-100. In February or March, 2015, some Klicos employees returned to the job site. Antonios Hatzileris

3

Depo. at 81, Kominos Hatzileris Depo. at 79-80. According to Klicos, those employees were preparing the equipment to resume work, *Id.*, but Saffo asserts, without citation, that the employees were there solely to remove equipment from the jobsite. [ECF No. 102 at 13]. In February, 2015, Klicos submitted an additional invoice for $200,000 to Saffo, although Klicos employees had not performed significant work on the project for almost two months. George Klicos Depo. at 314. According to Tia Saffo, Saffo's business manager, during a telephone conversation, George Klicos promised to return his workers immediately to complete the job if the $200,000 invoice were paid, and Saffo agreed to pay the invoice. Tia Saffo Depo. at 187-88. George Klicos does not recall that conversation with Tia Saffo. George Klicos Depo. at 316-17. In March, 2015, Klicos sent an additional invoice for $345,000, although Klicos had performed no additional painting work since December. Saffo declined to pay that invoice, leading Klicos to withdraw from the project. George Klicos Depo. II at 560-64; George Klicos Depo. at 306-07. At a meeting on March 19, 2015, Saffo informed MDTA that "Klicos is no longer a part of the project." [ECF No. 86-11].

In total, over the course of the Project, Saffo paid Klicos a total of $2,738,600.73. Klicos Mot. Exh. 9. The total expenses incurred by Klicos amounted to $1,002,043.26, Klicos Mot. Exh. 16, and the total gross payroll expended by Klicos amounted to $1,006.045.52. Saffo Mot. Exh. 17.

For use on the Project, Klicos constructed a recycling unit upon a trailer owned by and registered to Klicos. Kominos Hatzileris Depo. at 47-49. Other expenses for the construction of the unit were billed to Saffo through the invoices submitted. George Klicos Aff. II (July 15, 2017) at ¶ 10. Upon Klicos's departure from the job site in March, 2015, Klicos removed the recycling unit. Kominos Hatzileris Depo. at 82. According to the Saffo employee, Michael Ost,

the two companies were going to distribute machines "between the two parties, assuming the successful completion of the project. It had not been determined who would take what." Ost Depo. at 124-25. Nick Saffo testified that, as to equipment, "If we purchased anything in the cost, that we were going to take a look at it at the end." Nick Saffo Depo. at 78. Finally, Ost also testified that the recycling unit "was going to be split at the end of the project, whether or not it was a dollar value, we never really came to terms." Ost Depo. II at 435.

## ANALYSIS

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Whether a fact is material depends upon the substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Conclusory or speculative allegations do not create a genuine issue of material fact, nor does a "mere scintilla of evidence[.]" *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (citing *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962) (per curiam)). However, the court must abide by the "affirmative obligation of the trial judge to prevent

factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

### A. Saffo's Motion for Summary Judgment

Saffo has filed a motion seeking summary judgment as to Klicos's three claims: breach of contract, unjust enrichment, and quantum meruit. Each claim is addressed below.

#### 1. Klicos's claim for breach of contract

Klicos alleges that Saffo breached an oral contract between the parties, which, in Klicos's view, constituted an "Oral Joint Venture Agreement." First Amd. Compl. at 7. In Maryland, "the hallmarks of a binding contract are 'an offer by one party and an unconditional acceptance of that precise offer by the other.'" *Estrin v. Natural Answers, Inc.*, 103 Fed. Appx. 702, 704 (4th Cir. 2004) (quoting *Lemlich v. Bd. of Trs.*, 282 Md. 495, 385 A.2d 1185, 1189 (1978)). In *Estrin*, the court found that the parties had not entered into a contract because "[s]ignificant terms remained to be negotiated" and there was no "agreement as to the essential terms of the deal." *Id.* at 705; *see also ABT Associates, Inc. v. JHPIEGO Corp.*, 9 Fed. Appx. 172, 174 (4th Cir. 2001) ("To establish that a binding contract was made, a plaintiff must adduce evidence . . . of a meeting of the minds as to the essential terms of the contract.").

Although Klicos's First Amended Complaint appears to allege that the Oral Joint Venture Agreement was reached sometime prior to May 16, 2013, First Amd. Comp. at 9, at his deposition, George Klicos testified that the Oral Joint Venture Agreement was reached at the lunch meeting at Nick's Seafood in Baltimore in November, 2013. Klicos Depo. I at 156-157 ("As far as officially cementing the deal, in my mind it was done that day. We left there, there was no misunderstanding how we were going to move forward on the job. That we were going

6

to do the job together and split it up at the end.") However, George Klicos also characterized the November lunch as "kind of the beginning of an ultimate brainstorming as to how we're going to attack this and do this job," *Id.* at 158, and as "pretty basic, basic conversations" *Id.* at 159. George Klicos conceded, "There was no formula as to why we got paid this or why we got paid that. There was never any formula going in as to how we would get paid, when I- how much I would get paid, exactly how much I would get paid." *Id.* at 166.

The facts of this case are similar to those presented in *Dolan v. McQuaide*, 215 Md. App. 24, 35 (Md. Ct. Spec. App. 2013). In *Dolan*, a business planning consultant provided ongoing advice and services, over approximately three years, to the owner of a new car wash, without a written agreement between the parties. *Dolan*, 215 Md. App. at 30. After a falling out, the consultant sued the car wash owner, alleging breach of oral contract and promissory estoppel, and the trial court granted summary judgment in favor of the car wash owner. *Id.* at 31. The *Dolan* court affirmed the grant of summary judgment on appeal, finding that the consultant's "insufficient sets of factual allegations" did not amount to an agreement or contract, since "the parties spoke only in general terms about what she would do in exchange for a share in the business . . ." *Id.* at 34. The *Dolan* court also noted that the parties' ongoing provision of services cannot form an oral contract, absent a definite promise. *Id.* at 34-35. Similarly, in this case, even taking the facts established by the depositions of George Klicos and other Klicos employees in the light most favorable to them, the general nature of the conversation at Nick's Seafood does not establish a precise offer or an agreement on the essential terms of an oral contract.

In opposing Saffo's Motion for Summary Judgment, George Klicos filed an Affidavit in which he asserted significantly more detail about the agreement at Nick's Seafood. George

7

Klicos Aff. I (May 12, 2017) at ¶ 5-17. In the Affidavit, George Klicos alleges that the oral contract reached that day included the specific identities of the supervisors and managers each side would provide, the responsibilities of each party with respect to painting crews, the means by which expenses were to be paid out by the parties, the mechanism for reimbursement of expenses at cost, without profit or overhead, and the fact that, "[a]fter payment of current expenses, revenue from MDTA progress payments (anticipated profit), less a modest cushion for unanticipated expenses, would be split 50/50 between Klicos and Saffo on an on-going basis as the Project continued." *Id.* The content of that Affidavit stands in stark contrast to George Klicos's deposition testimony about the general, background conversation at Nick's Seafood. A party cannot create a genuine issue of material fact through an affidavit, submitted in opposition to a motion for summary judgment, that contradicts the party's earlier deposition testimony. *See Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 976 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984). Ultimately, therefore, the self-serving affidavit is insufficient, and Klicos has adduced "no evidence from which a factfinder could infer a definite set of promises that gave rise to an oral contract between the parties." *Dolan*, 215 Md. App. at 35.

In the absence of a valid articulated oral contract, then, the question becomes whether the parties' ongoing conduct formed an implied contract in law or in fact. *See Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs*, 155 Md. App. 415 (2004). An implied contact exists where the parties' actions imply the definite terms of an arrangement, even without a verbal communication establishing the terms. *See Dolan,* 215 Md. App. at 36 *(citing* 1 Williston on Contracts § 1.5 (4th ed. 2002) However, even viewed in the light most favorable to Klicos, the parties' actions here do not substantiate an agreement to the terms Klicos alleges. As

described by George Klicos, he was sending invoices for whatever amount he believed fair, in addition to his company's incurred expenses, and Saffo was paying his invoices in full until it eventually balked. George Klicos Depo. at 289, 305; George Klicos Depo. II at 504. Klicos's invoices were not calculated based upon, and did not reflect, 50% of the profit of the project on an ongoing basis, because Klicos had not calculated the profit. George Klicos Depo. II at 419-22. Accordingly, the parties' conduct, viewed in the light most favorable to Klicos, does not evidence an implied agreement to pay 50% of the profits on an ongoing basis until the conclusion of the Project. In the absence of either an express or an implied contract, summary judgment is appropriate on Klicos's breach of contract claim.

### 2. Klicos's Claims for Unjust Enrichment and Quantum Meruit

Klicos's other two claims sound in quasi-contract. Initially, Saffo contends that the quasi-contractual claims must be dismissed because Klicos asserted the existence of a valid contract. Saffo is correct that, where a contract exists, a party cannot also recover under a quasi-contract theory. *See Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94-95, 747 A.2d 600, 606 (2000). However, as noted above, no valid contract exists in this case, so Klicos's quasi-contractual claims may proceed.

Although Klicos has presented separate claims for "unjust enrichment" (Count Two) and "quantum meruit" (Count Three), under Maryland law, "*quantum meruit* is not truly a cause of action but a *measure of recovery* available in an action for contract implied-in-fact or for unjust enrichment." *Dolan*, 215 Md. App. at 37-38 *(citing Alternatives Unlimited*, 155 Md. App at 482-83*)*. In a case for unjust enrichment, *quantum meruit* is measured by "the actual value realized by the defendant," and not the market value of the plaintiff's services rendered. *Id.* at 38.

9

Saffo contends that summary judgment is appropriate because Klicos has adduced no evidence to establish that the value of the work it performed exceeded the amount it was paid. Def. Mot. 23-24. However, as noted above, the market value of Klicos's work is not the appropriate measure of damages for unjust enrichment. Instead, the operative question will be whether the actual value realized by Saffo for Klicos's work is more or less than $2,738,600.73. Viewing the facts in the light most favorable to Klicos, its expert report outlining Saffo's profits can be used, in conjunction with other witness testimony, to infer the value provided to Saffo by Klicos's work. *See* [ECF No. 88, Exh. 15 (filed under seal)]. The factfinder will assess, at trial, whether that value is greater than or lesser than the amount Saffo paid to Klicos over their course of dealings. However, because Klicos's quasi-contractual claims are duplicative and because *quantum meruit* is a measure of damages rather than an independent cause of action under Maryland law, summary judgment will be granted as to Count Three and denied as to Count Two.

### B. Klicos's Motion for Partial Summary Judgment

Klicos seeks summary judgment as to Counts I, II, III, IV, V, VI, and portions of Count VII of Saffo's Counterclaim. In addition, Klicos contends that certain general categories of damages sought by Saffo are not recoverable. Each argument is addressed below.

#### 1. Saffo's Claims Pertaining to the Recycling Unit

Saffo asserts several claims pertaining to Klicos's removal of the recycling unit from the job site when it left the Project. Klicos now seeks summary judgment as to Counts II, III, and IV of Saffo's Counterclaim, and seeks partial summary judgment as to the breach of contract claim in Count VII, as it pertains to the recycling unit. Initially, for many of the same reasons addressed above, the parties did not reach an oral contract regarding the disposition of equipment

10

used for the Project. According to the deposition testimony of two of Saffo's own witnesses, Ost and Nick Saffo, there was no agreement on the terms for dividing the equipment once the project concluded. *See* Ost Depo. II at 435 ("[w]e never really came to terms."); Nick Saffo Depo. at 78 ("We were going to take a look at it at the end."). "Where an essential element of a contract is reserved for future agreement, no legal obligation as to such element arises until such future agreement is made." *First Nat'l Bank of Md. v. Burton, Parsons & Co.*, 57 Md. App. 437, 470 A.2d 822, 828 (1984) (quoting *Richmond Screw Anchor Co., Inc. v. Umbach*, 173 F.2d 532, 534 (7th Cir. 1949)).

The affidavit of Michael Ost, submitted in opposition to Klicos's motion for partial summary judgment, directly contradicts his earlier deposition testimony and cannot be used to establish a genuine issue of material fact. *Compare* Ost Depo. II at 435 ("[W]hether or not it was a dollar value, we never really came to terms.") *with* Ost Aff. at ¶ 11 ("It was also agreed that Saffo and Klicos would split the cost of building a recycling unit for use on the project, and that the value of the recycler would be divided 50/50 at the end of the project."). Because, even taken in the light most favorable to Saffo, the remaining evidence does not establish an enforceable agreement as to the disposition of the recycling unit, Saffo's breach of contract claim as to that unit is not viable.[2] In the absence of a valid contractual agreement, Saffo has not established a cognizable property interest in the recycling unit on which it could premise its claims for conversion (Count II), replevin (Count III), or detinue (Count IV). *See Wallace v. Lechman & Johnson, Inc.*, 354 Md. 622, 633 (1999) (describing conversion as "the wrongful deprivation of a person of property to the possession of which he is entitled"); *Wallender v. Barnes*, 341 Md. 553, 561 (1996) (noting that replevin is used to recover goods "the possession

---

[2] Because Klicos did not seek summary judgment in full as to Saffo's breach of contract claim, the remainder of that claim will proceed at this stage.

11

of which the plaintiff claims to be entitled") (quoting 2 J. Poe, *Pleading and Practice* § 425, at 417 (1925 Tiffany Ed.) (2 Poe)); *Id.* at 570-71 (describing detinue as a means to recover "personal property and damages for the wrongful detention of the property") (quoting Md. Code Ann., Cts. & Jud. Proc. §§ 11-104 (West)). Summary judgment is therefore appropriate on each count.

### 2. Saffo's Claims Pertaining to Actual Damages for Delay in the Contract

Although Saffo has alleged that it suffered damages from the delay in completing the MDTA project caused by Klicos's departure from the job site, it has not presented any evidence to substantiate its damage claims. Saffo asserts that, "the fact that Michael Ost testified in his deposition that Saffo had not *yet*, at that time, calculated its delay damages, does not foreclose Saffo's right to present evidence of its damages at trial." Saffo Opp. at 10. However, damages is a required element of a breach of contract claim, and where a plaintiff fails to produce evidence of damages, summary judgment as to actual damages is appropriate. *See Nguti v. Safeco Insurance Co.*, Civil No. PX-15-742, 2017 WL 2778821 at *3 (D. Md. June 27, 2017). However, even where summary judgment is granted due to a failure to produce evidence of actual damages, a plaintiff may still proceed to trial on a breach of contract claim to recover nominal damages. *Id.* Accordingly, Saffo will be permitted to adduce evidence of a breach of the oral contract caused by delay in Klicos's performance of its tasks, but will be limited to recovery of nominal damages if it prevails.

### 3. Saffo's Claims for Intentional and Negligent Misrepresentation

To prevail on a motion for summary judgment involving a claim for intentional misrepresentation, a plaintiff must establish:

> (1) That the representation made [was] false;

(2) That its falsity was either known to the speaker, or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual knowledge;
(3) That it was made for the purpose of defrauding the person claimed to be injured thereby;
(4) That such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and that [s]he would not have done the thing from which the injury resulted had not such misrepresentation been made; and
(5) That [s]he actually suffered damage directly resulting from such fraudulent misrepresentation.

*Miller v. Fairchild Industries, Inc.*, 97 Md. App. 324, 341-42 (Md. Spec. App. 1993) (quoting *Martens Chevrolet v. Seney*, 292 Md. 328, 333 (1982)). Generally, promissory statements or representations regarding future conduct are not actionable as fraud or intentional misrepresentation, unless the statements are made with present intention not to perform. *See Travel Committee v. Pan American World Airways, Inc.*, 91 Md. App. 123, 179 (1992).

Here, Saffo alleges two different alleged misrepresentations: First, Saffo asserts that during a telephone call with Tia Saffo in early 2015, George Klicos falsely promised that upon payment of the $200,000 invoice, Klicos would return to the job immediately and continue to work on the Project. Saffo appears to have an uphill battle in establishing that there was a present intention not to perform as of that conversation, given the fact that multiple Klicos employees testified that they returned to the jobsite in the February/March timeframe to prepare the equipment to continue the job. *See, e.g.*, Antonios Hatzileris Depo. at 81; Kominos Hatzileris Depo. at 79-80. However, taken in the light most favorable to Saffo, there is a genuine issue of material fact regarding George Klicos's intent at the time of the statement, such that summary judgment is not appropriate on the claim for intentional misrepresentation. *See, e.g., Leading Edge Tech. Corp. v. Sun Automation, Inc.*, Civ. No. H-90-2316, 1991 WL 398682, at *11 (D. Md. Sept. 24, 1991) ("[S]ummary judgment is seldom appropriate in cases

in which particular states of mind are decisive"). The claim for negligent misrepresentation, however, is not sustainable. Because the alleged misrepresentation involves Klicos's future conduct, it is actionable only if George Klicos harbored a present intention not to perform. That intent would render the misrepresentation intentional, not negligent. *See Miller v. Fairchild Ind., Inc.*, 97 Md. App. 324, 346 (Md. Ct. Spec. App. 1993). Accordingly, summary judgment is appropriate as to Saffo's negligent misrepresentation claim.

The second alleged misrepresentation is the general allegation "that Klicos had previously promised to provide services on the project through completion." Saffo Opp. to M. for Partial S.J. at 14. Essentially, this contention restates Saffo's breach of contract claim, and failure to perform a contract does not convert a breach of contract into fraud. *See Sims v. Ryland Group, Inc.*, 37 Md. App. 470, 378 A.2d 1, 3 (1977). In addition, unlike in the context of the representation to Tia Saffo, here Saffo has not identified the person who made the promise, or the context in which the promise was made. Fraud must be pled with particularity under Fed. R. Civ. P. 9(b). ("In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity"). Finally, because the alleged representation, again, is promissory and involves future conduct, a negligent misrepresentation claim cannot lie, and Saffo has adduced no evidence of a present intent not to perform at the time the alleged misrepresentation was made. In fact, it would be utterly implausible to suggest that, at the Project's inception, Klicos had a present intent not to perform to completion, given the intervening nine months of work by Klicos's employees. For all of those reasons, partial summary judgment is appropriate as to any claim for misrepresentation at the inception of the parties' course of conduct.

### 4. Saffo's Claims for Attorneys' Fees and Punitive Damages

In each count, Saffo claims that it is entitled to other damages, including attorneys' fees and punitive damages. However, Saffo cites no basis which might entitle it to an award of attorneys' fees, and none of the causes of action in Saffo's counterclaim permit such a recovery. Accordingly, summary judgment is appropriate as to those claims.

Summary judgment is not appropriate regarding Saffo's claim for punitive damages, as it relates to the surviving claim for intentional misrepresentation. Taking the facts in the light most favorable to Saffo, George Klicos intentionally induced Tia Saffo to make the $200,000 payment without a present intention to perform additional work on the job, as payback for a decision Saffo made to exclude Klicos from another job in Texas. Saffo's version of events may not ultimately prove meritorious, or the factfinder may not believe Klicos's conduct is heinous enough to rise to the level of "actual malice." *See Hoffman v. United Iron,* 108 Md. App. 117, 148 (1996) ("Proof that a party acted to pursue his or her own selfish business interests at the expense of others is not, itself, sufficient proof of actual malice."). Regardless, summary judgment is not warranted at this stage.

### 5. Saffo's Claim for Unjust Enrichment

Finally, Klicos seeks summary judgment as to Saffo's unjust enrichment claim. Drawing all inferences in the light most favorable to Saffo, a reasonable factfinder could conclude that the value to Saffo of the work performed by Klicos during its tenure on the project is less than the $2,738,600.73 Saffo paid, and thus that Klicos was unjustly enriched by the arrangement. As discussed above, the value of the work will be determined at trial. Accordingly, summary judgment is denied as to Count One of Saffo's Counterclaim.

## CONCLUSION

For the foregoing reasons, both parties' motions for summary judgment will be granted in part and denied in part. Specifically, Saffo's Motion for Summary Judgment is granted as to Counts One and Three of the First Amended Complaint, and denied as to Count Two. Klicos's Motion for Partial Summary Judgment as to Saffo's Counterclaim is granted as to Counts Two, Three, Four, and Six, and denied as to Count One. Summary judgment is also denied as to Count Six regarding the alleged misrepresentation to Tia Saffo to induce the $200,000 payment, but granted as to any other misrepresentation. As to Count Seven, partial summary judgment is granted as to the contract claim pertaining to the recycling unit, and as to the claim for actual damages for any delay in performance. Moreover, summary judgment is granted as to Saffo's claim for attorneys' fees, but denied as to its claim for punitive damages. A separate Order follows.

Dated: _September 6, 2017_

_/s/ J. Frederick Motz_
J. Frederick Motz
United States District Judge